253258 William Klopfenstein at All v Fifth Third Bank. Arguments not to exceed 15 minutes per side. Mr. Pellegrino for the appellant. May it please the Court, Tim Pellegrino for Fifth Third Bank. I'd like to reserve three minutes for rebuttal. The District Court erred in awarding Plaintiff's Counsel $3.3 million in fees on their $2 million Truth in Lending Act claim because all but a fraction of those fees were incurred litigating the $443 million contract claim that plaintiffs lost. Today, I'd like to make three points. First, plaintiffs are entitled to no fees incurred litigating the contract claim. Second, even if the claims were related, the award should have been significantly reduced because these were not excellent results. And finally, the Court's Lodestar calculation was twice inflated, both as to the number of hours and plaintiff's rates. No client would ever consider this $3.3 million award reasonable, and the District Court erred in reasoning otherwise. On your first point, didn't Judge Barrett account for the lack of success on the contract claim? He reduced it a couple of times, but one thing he did is he made sure that the time entries sort of pre-summary judgment, I realize most things after summary judgment were cut off, right, because that was all trial work tied to the breach of contract. So that all went away. Yes, Your Honor. And then for the work before summary judgment or leading up to summary judgment for that, Judge Barrett looked at the work and said for most of this, at least some percentage, a good percentage of it, it was really for both claims, so I can't divorce the two. Is that right? And if so, what's wrong with that? I think that there's, one, I do not think the District Court made any reduction for degree of success. It accepted plaintiff's reduction of 85%. I think degree of success is a slightly different point. Okay, Your Honor. You just said it shouldn't give anything for the breach of contract. Yes, Your Honor. And I said I thought he cut all the fees off after summary judgment, right? Yes, Your Honor. And before summary judgment, he said, look, I'm looking at the entries. Some of these I'm going to cut, but most of them are applied to both claims, and they're a one-on-one claim. They would have done the work anyway for TILA, so they get the money. Yes, Your Honor. And I think that is correct, what the District Court did, but I think it was an error because in this case the claims were not related. And so it was plaintiff's burden to ultimately segregate the time between the TILA claim and the breach of contract claim. The District Court below found the claims related, but that was error because there is not a common core of operative facts, and the claims are not legally related. And we look at this Court's prior opinion. Well, they both turn on the 120 percent term, right, pretty materially. Well, Your Honor, I do think that. That's the whole gist of the TILA claim, right? Yes, Your Honor. And on the breach of contract, it's a dispute. There's two different terms. Which one applies? Yes, Your Honor. That one claim does overlap, but the case law. That's like the main, I mean, you called it a claim. That's like the main fact or the main term and the significance of that term. I guess there's two maybe different legal theories that come off from that term. Yes, Your Honor. Sort of why that term was part of the contract and who intended what and how it related with the other term. Maybe that last part is most relevant only to the breach of contract claim, but they're not just like two ships passing in the night. I would agree that they are not two ships passing in the night, Your Honor. You're right because at the 54B stage, the Court said that there is some, to be sure, like there is one thing that overlaps. In fact, there are multiple things. It involves the same plaintiffs. It involves the same defendant. It involves the same contract. But when we're looking at whether claims are related, we look to the common core. And so if we look at a TILA claim, the TILA claim turns on what does the contract provide and does it align with Regulation Z. So that's all we're looking at as a contract. We're looking at whether it complies with Regulation Z. When we look at a contract claim, the operative question is intent. What did the parties to this contract intend for this product to cost? And so the operative facts, the body of facts of what we are looking at, just do not overlap. When we look at a claim that does overlap, it becomes clear as to how that test is applied. In the Jordan case, when this Court claimed, then this Court concluded that the two claims were related. It was a retaliation claim and a harassment claim. The operative facts that were necessary to build that case overlapped considerably. In this case, the same is not true. The TILA claim turned just on the four corners of the contract and whether that complied with Regulation Z. And the contract claim was based on extrinsic evidence from all sorts. Just because the one provision overlapped does not mean that all of the litigation was about TILA. The TILA claim in particular, we just know from common sense that plaintiff's counsel did not spend $5.6 million litigating the $2 million strict liability claim. The entire litigation and the driving force behind this litigation was the breach of contract claim. That's what the majority of the fees were plainly incurred litigating. And so the District Court's 85% finding was itself unreasonable because it failed to account for the fact that TILA was only a very small portion of this case. The operative facts did not overlap. And when we look at this Court's 54B opinion, it's very clear. The differences between plaintiff's TILA and breach of contract counts as pleaded sufficiently outweigh what they have in common. The claims are based on different conduct. The damages sought in each count are grounded in different places. They stem from different acts or omissions. The two claims are different factually, and as a result, they were not related. And so the District Court should have held plaintiffs to their burden to establish what fees were actually spent litigating the TILA claim because that's all that they are entitled to. I'm sorry. The quote, the material just sounded like you were quoting. Is that from the District Court opinion? No, Your Honor. It's from this Court's Rule 54B opinion. So at the 54B stage, this Court made findings about the 54B order, and that's what I was quoting. I was roughly quoting, so I think there might be some errors. It sounded like you were exactly quoting. That was what I was concerned.  Okay, but I now know what it's from. Thank you. I do want to just, for a brief minute, talk about the fact that the claims this claim is an outlier. Plaintiffs have never cited a comparable TILA case in the history of TILA jurisprudence, which I think should give this Court significant pause as to its correctness. We don't think that a $3.3 million award on a $2.0 million judgment is at all reasonable. Does that sort of indicate you can never get more than $2 million in fees on a TILA claim when that's the statutory limit? I would be hard-pressed, Your Honor, to ever think of a case when a $2 million TILA claim would result in a justifiable $3.3 million award. If there is such a case, it is not this one. So you're starting to litigate this, and at some point you should tell the client, sorry, we've got to quit because we're not going to get paid? No, Your Honor, I don't think that there's any obligation to do so, but I think the case law instructs that litigants are not to over-litigate cases. And in particular, they are not allowed to ultimately litigate a fee, a claim that doesn't entitle them to fees, and then seek those fees under the fee-shifting statute. Wouldn't defendants settle the case if there's sort of an open-and-shut TILA claim against them where they confess judgment or settle the case and pay the $2 million and it stops the fee clock, I think? In other words, defendants have some control over this too, right, in a typical TILA case? Yes, Your Honor, and in this case in particular, Fifth Third did offer to settle the case in 2016, and plaintiffs walked away from that in order to pursue higher damages. At the end of the day, if we were looking at the litigation for whether it was just a TILA claim, if we divorced the breach of contract claim entirely, which is what the district court should have done, this case would have been resolved very quickly, just as the small case was resolved very quickly. It was a straightforward TILA claim. It was not novel. It turned on one disclosure in the contract, and it was based on essentially how Regulation Z applies to that one provision. This was not the federal habeas law of TILA cases. But when you say that the offered settlement, that was, I understood, as a settlement not just for TILA but for all of the claims, because you have offered the settlement just on TILA. It's certainly possible, Your Honor, you can imagine a defendant would do that, but as a general matter, defendants settle cases to get complete peace, and so I think the $8.5 million was a very reasonable settlement offer. It's four times what plaintiffs ended up receiving, and this Court's case law is very clear that that fact should be considered in the fee calculus because ultimately plaintiffs' clients receive no benefit from the services of their lawyers for anything that occurred after 2016. Do you agree it's abuse of discretion review of Judge Barrett's assessment of the relatedness question? Yes, Your Honor, I do believe it is an abuse of discretion. It's one of the tricky parts of these fee cases. They're pretty complicated. A lot of entries to look at, a lot of considerations, and so that's one place where we sometimes do lean into the abuse of discretion standard. Yes, Your Honor. As an appeals court. Yes, Your Honor. I think it is an abuse of discretion. I don't think that an abuse of discretion standard is unlimited. This Court made clear in Lineman and Haddox and in Coulter that it is willing to step in, and if there ever was a case when it should step in, this is it because the $3.3 million fee award is unreasonable. An abuse of discretion also exists if there's an error in law, and when we look at what happened at the Rule 54B stage, it is impossible to square what this Court said at the Rule 54B stage with the finding that they are related, and in many ways it becomes a case where essentially plaintiffs argued one thing at 54B and a different thing on the fee calculus because it suited them, and the law doesn't allow them to do that. I do want to briefly touch on degree of success if there are no questions about the relatedness finding. In this case, this litigation was not a success for plaintiffs' counsel. They lost 16 of their claims on the pleadings. They lost the $443 million breach of contract claim, and then they walked away from that settlement, and all of those factors counsel in favor of a significant reduction. Hensley is clear that the success of a claim is ultimately judged by what was received, and when we look at this, in other words, the proof of the pudding is in the eating, and in this case, plaintiffs' clients will walk away with a single-digit recovery after 16 or 15 years, 10 years of litigation. If we agree with you on this, what's the remedy? Yes, Your Honor, and so we propose, we think that the errors in this case require that the award be vacated, and we propose two alternative calculations. One is for $310,000, and we've explained that. Well, that's tying the two together. So, I mean, I thought that I agree with you. There's this odd dynamic of they lost a lot of claims. The big ticket claim they lost. But Judge Baird has already sort of accounted for that in some ways, right? He took off all the time after summary judgment, the point I made earlier, and then he tried to discount the time before summary judgment to reflect that at least some of it was only for the breach of contract. So he's already done some of this work, I think. Yes, Your Honor, and I think plaintiffs do lean hard on the fact that the district court did a detailed review. What I would say is that the court can do a detailed review at each stage, but if at the end the result is unreasonable, the fee award needs to be vacated. And here, the district court made findings at each stage. Those findings are reviewed for abuse. Which finding? I think it's really the relatedness point, isn't it? Isn't that like the bulk of this? Well, I agree that that is a significant portion of it, Your Honor, but I do think I have arguments as to the Lodestar calculation, which I think are also an abuse of discretion. When it comes to the relatedness finding, we find plaintiffs making two sides of the same argument, and whether we can square the district court's relatedness finding with this court's prior opinion, that would be an abuse of discretion because it's not in line with the law of the case. The district court has discretion at each stage. He is able to select from various options, and many of those options would be reasonable. But if at the end of the day the award is patently unreasonable, that's when this court would step in. All right, that's just a general assessment. In other words, that's not totally tied to the lack of success. It's, I guess, taking a look. I just don't see what the – I'm just having trouble seeing – it feels like lack of success was maybe somewhat, if largely, accounted for. If you think that 85% of the entries pre-summary judgment were related to TILA, which I think there's an open question about, but I just want to make sure I'm looking at it the right way. Yes, Your Honor. I think just to be clear, the way I read the district court's orders, he did not apply a further reduction for lack of success. We think that he should have applied a significant reduction because by any measure. When it comes to the relatedness finding – I don't know to what. I don't know to what. All the time that was charged was time that was related to the TILA, maybe also related to breach of contract. But everything that all the fees, I think, that were received were tied to the TILA claim. And we think that that was in error, Your Honor, because we think that the case law requires the district court to essentially not award anything for the breach of contract claim. And so the relatedness finding is, I think, a first-step threshold issue in the case. All right. I'll take all of that. Can I just ask about the – maybe you can call it the Lodestar analysis, but the idea of what rates to apply. We obviously have a very sophisticated D.C. firm involved here, but then we have some regional firms, some Ohio firms, which are very sophisticated. I worked for one for a while, but sometimes the rates apply differently, and I think Judge Barrett applied just across the board the same hourly rate. So do you want to take a second to talk about that? Yes, Your Honor, I appreciate that. The Lodestar calculation, we think, was an error in law. And when we look at the Haddox case, this court instructs that in order to apply out-of-town rates, out-of-town counsel, and the retaining of them must be necessary. In this case, they were not necessary to hire out-of-town counsel. And we know that because local counsel litigated this case. Local counsel litigating in a local courthouse are entitled to local rates. And so we think that those are the rates that should apply. If we thought that at least a lead firm should get sort of national rates, but Judge Barrett applied that across the board, right, even to the more regional firms. Yes. So that would be one way to dissect it, right, to maybe apply regional rates to regional firms and apply a national rate to a more national firm? Yes, Your Honor. I do think that that is perhaps that we don't think that even the lead counsel firm should be entitled to out-of-town counsel rates. But assuming that the court disagrees, we think it is certainly an abusive discretion to apply Washington, D.C. rates to counsel located in Florida and Illinois and Kentucky and Ohio because local counsel rates should apply. I know my time has expired. I did want to just comment on the Williams and Connolly rates. I'm happy to address that, but I don't want to overstay. Any questions about that? I think it's probably. Thank you, Your Honor. You'll have rebuttal. Thank you, Your Honor. May it please the Court. The law in this circuit is that when a district court judge reviewing a fee petition gives a clear and concise explanation that that decision is entitled to substantial deference. That's higher than abusive discretion. That's what we've seen in cases like the Gaunter case and the Richard v. Caliber Home case. We didn't hear anything from my friend that the explanation was unclear. What we heard was that there was disagreement with the conclusion. That falls into the deference of the trial court. The trial court is the court that oversaw this litigation for over 10 years and is familiar with the work that was put in, heard the arguments, went through and reviewed the line-by-line time entries, and from that made a determination. And the trial court's determination was. . . Are you saying you might lose under abuse of discretion, but you win under this higher super-deference standard that you're telling us about? No, Your Honor. Can't we just talk about abuse of discretion? We can, Your Honor. Isn't that the standard that cases apply? Oftentimes, Your Honor, when there is a clear and concise opinion, as there is here, there is that higher standard. But under abuse of discretion, plaintiffs still are entitled to the fees that the trial court awarded. Now, the trial court's analysis looked at the fee petition that the plaintiffs put forward. That fee petition cut off time that was any time that was accrued after the grant of summary judgment. So that was the plaintiffs who didn't ask for that time. We also excised time for the appeal because the appeal was not related to the TILA claim. We also excised certain entries that we thought were specific. Why don't we talk about the things that weren't excised? So one of their main arguments was that these claims are actually quite distinct. Yes, there's a common component, the 120 percent rate. But beyond that, they are quite distinct. The elements are different. The TILA claim is like strict liability, essentially. And the breach of contract. . . I could be wrong with that. Correct me if I'm wrong. And the breach of contract requires a number of other elements about sort of what people were thinking and what they were trying to do and whether there was a meeting of the minds and that kind of thing. So what's your response to that? Of course, Your Honor. So TILA can be a strict liability claim, but there also is a reasonable estimate analysis, and that was put forward at one point in the litigation. So the story now that we have heard from my friend is that this was a simple, straightforward case. The history of the litigation shows that it was not. The Fifth Third initially filed a motion to dismiss on the TILA claim. After the case came back, plaintiff filed a motion for summary judgment before getting into some of the fact discovery in the case. And Fifth Third then requested, and we agreed to, conduct further discovery before having that motion for summary judgment briefed. So Fifth Third wanted to add in additional work into the case prior to. . . Well, you get paid for that work if it's tied to TILA. Yes. Yes, exactly. So it's a complicated case. I get all that. I think their point is that the claims were different, so you had to segregate out the two. So you get to do as much work as is necessary for TILA. Exactly, Your Honor. But that a lot of the work was actually really for the breach of contract, or you should at least segregate the two, the amounts you were spending on each claim. So it was cut down to the 85 percent, I think, and your point is all 85 percent should be tied to TILA? Yes, all 85 percent goes towards the TILA claim. Some of it also obviously went towards the breach of contract claim. Right, but my question was they're saying the claims are very different. So however many motions were acquired, that sort of thing, you still should have been segregating out what was really tied to. . . Not every motion or every piece of discovery had much impact, if any impact, on the TILA claim. It was really about the breach of contract, so you should have set that out separately. That's what I think they're saying. Yes, and that's what we did. We put forward that the 85 percent that we requested we thought was related to the TILA claim. The trial court did a line-by-line. . . Did you do separate time entries along the way? No, not along the way, no. Before we submitted our fee petition, we reviewed and we cut out the time entries that we thought were inappropriate to request for. The trial court then did a line-by-line review going through almost 7,000 time entries and determined that certain ones were not relevant to the TILA claim, so the trial court took those out. But most were, right? 85 percent were. . . The trial court made was 41 percent of what we requested. So he knocked out some line items completely. Yes, yes, Your Honor. Then the ones that were relevant, he applied 85 percent. Yes, yes, Your Honor, exactly. And he made a change in the rates. There was some discussion over what rates were used. He used historical Lafayette matrix rates as opposed to current Lafayette matrix rates, which is what we had initially requested. But in terms of the 54B analysis, Your Honors, 54B looks at whether the claims are distinct. And the claim specifically looks at the remedy. And so in a breach of contract case, the remedy is compensatory damages. In a TILA case, the claim is or the remedy is statutory damages. And so when this court was previously conducting its analysis. . . The elements are different, too. The elements are different as well, Your Honor, but they come from the same common basis of fact. The 120 percent APR disclosure is the central fact of both parts of the case. So all work that's related to the 120 percent APR is work that's related to both TILA and the breach of contract claim. And courts. . . Many courts have held that when you have. . . When you're doing work that could be characterized as related to both claims, you are allowed to recover fees for the work that you do. The question is just whether they're related. Yes, and the trial court looked through and determined which ones were related and which ones weren't. And the trial court's in the best position to do that. Because the trial court was the entity that was overseeing the case for over 10 years. Now, my friend points out that there's no comparable fee award. There's also no comparable TILA litigation that has gone on for 10 years. . . And gone through the rigor that this case went through. And so that's what justifies the fee award. Yes, there's not usually a breach of contract claim that accompanies a TILA claim. The TILA claims are quite easy to. . . Relatively far easier to litigate and don't take as much time. And maybe get settled. This case, it did take a lot of time to litigate. I know because this case was. . . But you're. . . This case is different than all the other cases. We just established that. I'm asking you, are there different things about those cases than this case that made this case. . . One being maybe there wasn't a breach of contract claim in those cases. Yes, sometimes there isn't a breach of contract claim. Sometimes there's not. Sometimes there's not. Right, so that would make it a totally different. . . It feels like a very different path to follow. Yes, that's correct. So that doesn't seem very. . . That's not apples to apples. Exactly, Your Honor. This is a. . . No, but you're saying this. . . You're saying this. . . Okay, but the prior cases were. . . Maybe there's no. . . You're saying breach of contract and TILA are so closely tied together. But there are a lot of other cases where there's just TILA litigation. There are cases that just TILA claims and not breach of contract and TILA claims. So there is a distinction. But if you look specifically at this case. . . Based on the work that was in the case, this was a heavily litigated case. Both sides had experts specific for TILA. The defendants hired a lawyer to provide opinions related to TILA that they paid $930 an hour to. Defendants filed a motion to dismiss. There was a motion for summary judgment. Those experts were exclusively for TILA and not at all for breach of contract? There were some experts that were related to both. Each side had what I would say is two merits type experts. And each side had a damages expert. So we had two experts. One that was focused more on TILA. One that was focused more on the breach of contract. But also had opinions related to TILA. We called one of those at the trial. Defendant called one of their two expert witnesses that dealt with the 100% impact. In a normal TILA case, are the fees usually $2 million or more? Normally, no, Your Honor. But this case, the work that was done in this case. I know, but that's because there's another claim that was complicated and complex to litigate. So it made this case totally different. So, of course, the fees are higher, but you didn't win on that claim. So it's like how do we reconcile all that? Well, Your Honor, we have to litigate the case. There was no offer to settle the TILA claim at any point. There's discussion about there was a potential settlement offer. That was a potential settlement offer for the entire case where $8.5 million was offered. That's less than 2% of the overall possible damages. You didn't win any of that. So we can't count any of that. You didn't win on breach of contract. You lost. I mean, this is actually kind of unhelpful. You lost on the big-ticket item. In terms of overall success, it doesn't look that great in some respects. This was a case where we achieved the maximum possible award for a TILA. We achieved the maximum recovery for a TILA claim. So it was a successful TILA claim. The breach of contract. Yes, there is a difference between the two. Massive difference. There is a massive difference. $440 million versus $2 million? $443 million versus $2 million. Yes, there is a big difference. The offer in the case was a global settlement offer, which was less than 2% of the total damages. It would be unreasonable and potentially unethical for us as class counsel to accept that kind of settlement with the possibility of that recovery. So there was never – Did that settlement have a measure of your damages, of your fees for the TILA? That settlement was just an $8.5 million offer. Which included both? Yes, it included everything. However much fees you could get out of it? It would have ended the case. That is, they certainly did not offer early on, hey, you've got us. You've only spent $100,000, so here's $2 million plus $100,000. Exactly, Your Honor. The first thing that happened was a motion to dismiss, to try to dismiss the TILA claim. So then after that was litigated, after the appeal, we tried to move for early summary judgment before some of the discovery that occurred. That was not accepted. We had to conduct further discovery. So while plaintiffs have some direction over the case, both sides have to work collaboratively to advance a case. And so while we tried to potentially resolve this TILA portion earlier with an early summary judgment motion, that path wasn't accepted. And so we had to litigate the case, which led to incurring the fees that we did. Now, there's also a lot of discussion, or there was some discussion on the LODESTAR in the case. So with the trial court data that awarded the adjusted Laffey matrix, my friend suggested that Ohio attorneys have to receive Ohio rates. But that's not quite what the law is. The trial court makes the determination of what an appropriate rate is. It determines what the appropriate market is. There's examples, and we've cited them in our brief. For instance, Gallo v. Moan and Barrow v. City of Cleveland, which are district court cases which deal with Ohio attorneys litigating claims in Ohio courts, where courts have awarded what would be considered higher than the traditional Cleveland attorney rate for a case. They've awarded rates that they feel are consistent with the type of case. The trial court in this instance made a determination that this was a national practice case. This was a national TILA class action case. The trial court's in the position to make that determination. It's up to the trial court's discretion, and it did so. And this is what you say he said this. This is in his order at page 7 where he discusses the type of case it was and his views of having seen it before him. Yes, Your Honor. And he gave a reduction to the rates that we actually requested because when cases go on as long as cases like this, courts can often award current rates because that means that the attorneys have not received recovery for many years. They've, you know, bared the expenses of litigation for many years. The court decided not to award the current rates. The court decided to award historical rates. So that's a reduction to what plaintiff requested. But I would also point out that there's other cases, including Smith v. Fifth Third Bank, where it was a class action case against Fifth Third Bank where the court used a lodestar multiplier. And what that is is it was a settlement case. The Laffey matrix rates were used, and it was determined that based on the amount of work that had been submitted, the attorneys were actually receiving a higher rate than the Laffey matrix rate in that breach of contract case against Fifth Third. And Fifth Third did not oppose that use of the Laffey matrix rates in that case, did not oppose the fact that there was, in fact, a higher rate awarded to the attorneys in that case. So that's indicative of part of the market of the case. We also submitted evidence through declaration of rates that Williams and Connolly has been known to charge in other litigation. We requested Williams and Connolly's rates. They refused to produce those. We filed a motion to compel. That was never ruled on. I would also note that the defendant's TILA expert, Mr. Green, was compensated, and his attorney compensated the rate of $930 an hour for his work in the case. So the defendants have taken the position that there's limited success in this case. Can I just keep you on the rates for a second? Of course, Your Honor. So I get this as a sophisticated case. There's a very sophisticated national firm based in D.C. that's doing lots of this kind of work. But then you bring in these other firms. Is your point that those firms could have also led this case just as well as you could have, in which case that could help them or it could hurt the rate I'm supposed to apply to you, because I think of maybe your firm as the national expert, or the D.C. firm as the national expert? Yes. How do I reconcile that? Is one bringing the other one up or one bringing one down? Well, I know you proposed the idea of splitting, potentially awarding the Ohio rates to Ohio attorneys and then national rates to the Tequan Zabari firm. That's obviously one option. But you have to look at the scope of the case. And so even if it's an Ohio firm practicing, if the case calls for a national practice, for instance, in Gallo v. Moen, which dealt with a specific area of law that had a nationalized practice, like this case, then the Ohio firm couldn't have done the work. If it requires nationalized practice and the Ohio firm is a regional firm, without the national lawyers leading the firm, they couldn't have done the case. Well, the Ohio firm is. We're boosting their rates up because they partnered with a really super uber firm. So the practice of law, even though one attorney may be located in Ohio, I'm located in Ohio, I practice in cases in California and in other jurisdictions, because these are national practice cases. So while you may be located in a particular area, the area of the work, not the location, the area of the work is what drives the rate. So even if Tequan Zabari wasn't involved in the case, we still would have requested Laffey Matrix rates. In another case, you might say tag-on attorneys might have been doing a lesser quality of work. Here the judge seemed to think they were all doing the same relevant national type of work. Exactly, Your Honor. That's really, at least potentially, more important than the difference. Did they or anyone try to say, well, we ought to look at Florida rates and Nebraska rates and so on, or was it all between Laffey and Rubin? Between Laffey and Rubin, Your Honor, and the idea that at the very least, Ohio attorneys should be awarded Ohio rates. If I could, Your Honor, my time has expired, but I would like to make one final point. So the position that the defendants have put forward is that plaintiffs should be entitled to approximately 5% of the fees they've requested. In the case of Ohio Right to Life Society, Incorporated, versus Ohio Elections Commission, the court held that such a draconian cut would be an abuse of discretion. In that case, the fee reduction was about an 85% fee reduction. The trial court rejected or gave a 85% fee reduction. The Sixth Circuit, this court, and that case number is 590F Appendix 597, came to the conclusion that that's an abuse of discretion. So to take the position that the defendant has put forward, this 5% is what should be awarded, that would be the abuse of discretion. That would go against what this circuit has held because to do so would disincentivize attorneys from litigating cases, and it would, similar to the point you suggested in questioning counsel, it would almost create the incentive to, well, we're not going to get any more fees. We should stop, and that's not what or we shouldn't take these kind of cases, and that's the whole purpose of a fee statute is to incentivize attorneys to take these kind of cases. Thank you, Your Honor. More questions? Thanks. We'll hear rebuttal. Yes, Your Honor, just a few points. I want to begin with Williams and Connolly's rates and why they're an apples-to-oranges comparison. I point the court to the Woodward case from the Eighth Circuit and the McLean case from the Fifth Circuit, which reject this sort of inquiry, and the reason is because what a defendant is willing to pay their counsel is totally different from what a plaintiff is entitled to under a fee-shifting statute. The inquiry for a plaintiff is what is the market rate in the venue sufficient to encourage competent representation, and defense counsel's rates do not impact that analysis at all. My friend on the other side also mentioned the market rate calculation and seemed to justify the district court's award because it's a market rate for class-action attorneys. I would ask this court to look high and low through the fee order for that sort of finding. The district court made no finding in that regard. Instead, it did make the finding about this being a national practice case, and I think that that runs afoul of this court's instructions in Lineman. When we read the Haddox case, it instructs that out-of-town counsel have to be necessary, and here it is abundantly clear that out-of-town counsel were not necessary to this litigation because it was litigated by Ohio counsel, including on this appeal. When it comes to the relatedness findings, Your Honor, I just want to stress that the claims were not made in the alternative. It was not a breach-of-contract claim and in the alternative a TILA claim. It were two separate claims. The claims may have overlapped in terms of the operative facts. If it had been a breach-of-contract claim and a promissory estoppel claim when you're trying to develop the same body of facts, but when it comes to the TILA claim and the breach-of-contract claim, the operative facts just do not overlap as this court recognized at the 54B stage. Lastly, I just want to stress the hours and the numbers in this case, which I think are striking. As counsel, my friend on the other side, noted, there's no TILA fee award that looks like this, and the reason is because the breach-of-contract claim was driving the resolution of this litigation from the beginning. The fee award, though, compensated six separate law firms, 34 separate timekeepers, awarded over 2,000 hours or a full year of internal conferencing time, and over 800 hours for legal research. The significant reduction should have been taken into account in order to bring those numbers back down to what a TILA fee award should be. I see my time is about to expire. If there are no other questions, we just ask that the district court's award be vacated and the case be remanded with instructions to not award fees in excess of $310,000. Okay. Thank you very much. Excellent lawyering all around, both cases. We appreciate that.